IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
    *Plaintiff*,

v.                          Criminal No. ELH-14-0296

DARRIUS CARR,
    *Defendant*.

**MEMORANDUM**

In this Memorandum, the Court resolves the Motion filed by Darrius Carr under 28 U.S.C. § 2255, seeking to vacate, set aside or correct his sentence (the "Petition"). ECF 41. The government has filed a response in opposition to the Petition. ECF 47 ("Opposition"). Petitioner has not replied, and the time to do so has expired.

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and records of the case conclusively show the prisoner is entitled to no relief . . . ." This is such a case. No hearing is necessary. For the reasons that follow, I shall deny the Petition.

**I.**       **Procedural and Factual Background**

Darrius Carr was charged on June 17, 2015, in a three-count indictment with the offenses of production of child pornography, in violation of 18 U.S.C. § 2251(a) (Counts One and Two), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count Three). The Indictment pertained to the defendant's sexual abuse and production of child pornography with respect to a young female child who was in his care, as well as the production and distribution of child pornography. Throughout the course of the proceedings, the defendant was represented by a seasoned attorney with the Office of the Federal Public Defender.

On November 19, 2014, the defendant entered a plea of guilty to Count One of the indictment (production of child pornography), in violation of 18 U.S.C. § 2251(a). *See* ECF 25; ECF 47-1 (guilty plea transcript). The plea was entered in connection with a Plea Agreement executed by Mr. Carr. ECF 20. Pursuant to the Plea Agreement, and under Rule 11(c)(1)(C), the parties stipulated to a sentence of 300 months of incarceration. *See* ECF 20 ¶ 11. As set forth in ¶¶ 6, 7, and 8 of the Plea Agreement (ECF 20), the parties anticipated a final offense level of 45, which took into account related conduct and three deductions for acceptance of responsibility.

The Plea Agreement included as Attachment A a stipulated Statement of Facts. *See* ECF 26. The Statement of Facts indicated, *inter alia*, that on both March 7 and March 11 of 2014, Carr was left alone with a female child, who was then almost three years of age. During that time, Carr produced a series of photographs and a video of himself and the child, focusing on the child's vagina and anus, and depicting him touching the child's genitals. In addition, in one video, Carr performed oral sex on the child.

In anticipation of sentencing, the probation office prepared a Presentence Report ("PSR"). ECF 28. In addition, counsel for Mr. Carr submitted a Sentencing Memorandum. ECF 27.

According to the PSR, after deductions for acceptance of responsibility, Carr had an offense level of 45. At the sentencing on January 26, 2015, there were no disputes regarding the calculation of the sentencing guidelines. *See* ECF 46 (Sentencing Transcript); *see also* ECF 47-3 (same). The court determined that Carr had a final offense level of 45 (ECF 46 at 10) and that he had a criminal history category of III. *Id.* at 11. With an offense level of 45 and a criminal history category of III, the defendant's advisory sentencing guideline range called for life imprisonment. However, the offense of conviction carries a maximum period of incarceration of

30 years for the single count to which the defendant entered a plea of guilty.   Therefore, the guideline range was thirty years' incarceration.   And, consistent with the "C plea," the Court imposed the agreed upon sentence of 25 years of incarceration, followed by a lifetime of supervised release.   *See* ECF 32; ECF 33.   Carr did not file a direct appeal to the Fourth Circuit.

## II.   Discussion

Carr was born in 1992.   ECF 28 at 2.   In his Petition, Carr argues that he received ineffective assistance of counsel.   In particular, he complains that his lawyer "did not fully explain plea agreement and threatened [him] with additional time if [he] had chosen to go to trial."   ECF 41 at 4.   Further, he asserts: "Counsel did not defend [him] in the charge and conviction of aiding and abetting which is NOT part of Count One of Indictment."   *Id.*   In addition, Carr claims: "Counsel refused [his] request to petition Court for mental evaluation when there is clear history of mental issues."   And, Carr asserts:   "Counsel flatly refused to defend me other than to demand I plead out."   *Id.*   Carr also complains that his sentence of 300 months "is excessive and discordant in the interest of justice."   *Id.* at 5.   He adds that the sentence "does go beyond what is reasonable punishment to serve the purpose of public safety." *Id.*   In his view, the   sentence is disparate and "shows the propensity for unfairness and discretional abuse . . . . Considering that this is Petitioner's first offense twenty-five (25) years does not fit the crime."   *Id.*

Finally, Carr asserts that "mitigating circumstances [were] not considered."   *Id.* at 7.   In this regard, he maintains that the victim was only two years of age at the time, and thus "had no cognizant memory of the event."[1]   He adds:   "While Petitioner takes full responsibility for his actions, the mitigating circumstances argue against a sentence of 25 years because there was no

---

[1] The victim was born in April 2011 and was almost three years old at the time of the abuse in March 2014.   ECF 28 at 3.

true victim impact.  The Petitioner did not share or distribute the photos and/or videos with anyone [and] the victim has suffered no harm . . . ." *Id.*

Section 2255(a) of Title 28 of the United States Code, under which Carr filed his Petition, provides relief to prisoners in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.  In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, Crim. No. RDB-10-0507; 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 Fed. App'x. 332, 334 (4th Cir. 2013) (same).

Carr contends that he received ineffective assistance of trial counsel, which, if so, would constitute a violation of his rights under the Sixth Amendment.  The right to effective assistance of counsel is a well recognized basis for relief under § 2255.  *See generally Missouri v. Frye,* ___ U.S. ___, 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).  To challenge successfully a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984).  *See Chaidez v. United States,* ___ U.S. ___, 133 S.Ct. 1103, 1107–8 (2013); *Roe*

4

*v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Lafler,* 132 S.Ct. at 1384; *Hill v. Lockhart,* 474 U.S. 52 (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker,* 719 F.3d 313, 318 (4th Cir. 2013).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688. This is known as the "performance prong," which relates to professional competence. The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

As the *Padilla* Court said, 559 U.S. at 371, is apt: "Surmounting *Strickland's* high bar is never an easy task." Accordingly, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

In the case at bar, Carr entered into the Plea Agreement with the government, by which he pleaded guilty to one count of a multi-count indictment. *Hill*, 474 U.S. 52, is noteworthy. There, the Supreme Court explained that "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). But, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper v. Garraghty*, 845 F.2d 471 (4th Cir. 1988), also provides guidance.  In that case, the Fourth Circuit described a petitioner's burden in the context of a post-guilty plea claim of ineffective assistance of counsel.  The Court said, *id.* at 475 (quoting *Hill v. Lockhart*, 474 U.S. at 59): "When a defendant challenges a conviction entered after a guilty plea, [the] 'prejudice' prong of the [*Strickland*] test is slightly modified.  Such a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Accord Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992).  Moreover, when, as here, a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).

With this background, I turn to Carr's claims.

Notably, Carr has not presented any evidence to support his claim that his trial counsel's performance was so deficient as to result in violation of Carr's Sixth Amendment rights.  As the guilty plea transcript reflects, defendant was placed under oath (ECF 47-1 at 2) and, in response to questions from the Court, he indicated that he had reviewed the charges with his lawyer (*id.* at 5-6); had no complaints about his lawyer's representation of him (*id.* at 6); there was nothing he wanted his lawyer to do for him that his lawyer failed to do (*id*. at 6-7); and he was fully satisfied with the legal services provided to him by his lawyer. *Id.* at 7.  In addition, in response to the Court's questions, he advised that he had fully discussed the Plea Agreement with his attorney and that his lawyer had answered all of his questions. *Id.* at 6.

In addition, the Court asked, *id.*:  "Without getting into any of the particulars of any private conversations that you had with [defense counsel], can you tell me in general whether

you have discussed with [defense counsel] your rights in connection with these charges, to include the right to a trial, your right to a jury trial, your right to a speedy trial, what the government's evidence will consist of at the trial, what, if any, defenses you might have to the charges, and . . . if you were convicted, your right to appeal to the next highest court, the United States Court of Appeals for the Fourth Circuit[.]   [M]atters of this type . . . Have you fully discussed them with [your lawyer].  Defendant responded, *id.* "Yes, Ma'am.""

Moreover, the Court reviewed with Carr the consequences of his guilty plea, the rights that he waived by pleading guilty, the nature of the advisory sentencing guidelines, and the terms of the C plea.  *See* ECF 47-1.  And, Carr confirmed the accuracy of the statement contained at the bottom of Attachment A (*i.e.*, the Statement of Facts), in which he agreed with the content of the Statement of Facts.  *Id.* at 8.

Petitioner asserts that his attorney threatened that a failure to plead guilty would result in a longer prison sentence.  But, as the government notes, Carr provides no examples or evidence as to how he was threatened.  And, as the government puts it, Carr was represented by a "veteran federal defender. . . ."  ECF 47 at 8.  That attorney, Gary Christopher, has submitted an unrefuted Affidavit to the Court (ECF 47-4), recounting that he served as an Assistant Federal Public Defender for the District of Maryland from August 1994 until May 2015. *Id.* at 1.  Christopher also expressly denied that he ever threatened Mr. Carr with additional time in the event he chose to go to trial.  Rather, he claims that he told Mr. Carr, based on counsel's view of the evidence, that if Carr went to trial "he would very likely be convicted on all counts, exposing himself to a sentence of life imprisonment."  *Id.*

Carr also complains that his lawyer failed to defend him on the charge of "aiding and abetting" under 18 U.S.C. § 2.  However, the defendant was not convicted under a theory of

aiding and abetting.

In addition, Carr complains that his lawyer was ineffective because he failed to obtain a mental health evaluation, despite Carr's request.  In *Hooper*, *supra*, 845 F.2d 471, the defendant had a history of mental illness.  He entered a plea of guilty to second-degree murder.  *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea.  *Id.*  The Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial.  *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty.  It was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time.  *Id.* at 475-76.  Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding.  *Id.*

Carr provides no factual basis for his assertion, nor has he informed the Court as to his mental health "history" or how it might have affected the outcome of his case.  Moreover, in his Affidavit, Christopher represents that Carr's mental health history was, in fact, fully investigated, including an examination and evaluation by a clinical neuropsychologist.  ECF 47-4 at 2. Christopher maintains that he and the defendant agreed that the benefits of the proposed plea agreement outweighed any benefit that Carr might gain from reliance on any mental health issues.  *Id.*  This was certainly a reasonable "strategy," subject to a "highly differential standard

of review." *Strickland*, 466 U.S. at 689.

It is also salient that, during the plea colloquy, after defendant was placed under oath, the Court expressly asked him if he had "been treated recently for any mental health and/or substance abuse problems?" ECF 47-1 at 5. Petitioner responded, "No, Ma'am." *Id.*

I agree with the government, which asserts, ECF 47 at 10: "As the record establishes that the mental health examination complained about *was* sought, that the decision not to pursue that strategy was both sound and agreed to by the defendant, counsel's performance is not sufficient. . . ." Further, as the defendant offers no evidence showing that the failure to request a mental evaluation led to a materially worse outcome, his claim on this matter should be denied on that reason as well.

Finally, petitioner argues that his attorney "flatly refused" to pursue any defense other than by way of a guilty plea. This assertion is plainly refuted by the Rule 11 colloquy and the Affidavit of Mr. Christopher.

Even in his § 2255 Petition, Carr does not dispute his guilt. Indeed, as the government points out, the evidence of Carr's guilt was "overwhelming," in that, among other things, Carr "videotaped himself performing oral sex on and digitally penetrating a toddler . . . ." ECF 47 at 11. His attorney's advice to plead guilty was certainly a sound strategic decision in that, among other things, by pleading guilty to one count only, the defendant substantially limited his maximum exposure. Otherwise, he might have faced a potential life sentence.

And, during the plea colloquy, the defendant expressly advised the Court that no one had forced him, threatened him, or coerced him in any way in order to induce him to plead guilty. ECF 47-1 at 41. This Court subsequently found that the defendant was fully competent, capable of entering an informed plea of guilty, was aware of and understood the nature of the charges and

the consequences of his guilty plea, and that the guilty plea was knowing, intelligent, and voluntary. *Id.* at 49.[2]

The government argues that Carr's challenge to the sentence as excessive and disparate is procedurally barred because he failed to raise this claim on direct review.   Alternatively, the government argues that the challenge is without merit.

Even assuming, *arguendo*, that the claim is properly before this Court, it lacks merit.

As noted, Carr argues that his sentence of 25 years (300 months) is "excessive and discordant in the interest of justice."   ECF 41 at 5.   As the government points out, the 25 year sentence was well below the statutory maximum of 30 years under 18 U.S.C. § 2251(e), and that maximum applied to each of the three charges for which the defendant might have been convicted had he gone to trial.   And, the sentence was obviously below the sentencing guideline range, which exceeded the statutory maximum.   The Court considered the arguments of the parties at sentencing and accepted the C plea as sufficient, but not greater than necessary, to accomplish the objectives of sentencing.   ECF 47-3 at 26.

I categorically reject defendant's specious argument that there was no victim impact because the victim was supposedly too young to remember what defendant did to her.   To begin, that is not the only component of sentencing.   Moreover, a person's psychological development may well be affected by events to which he or she is subjected, even if the victim is unable to recall the events themselves.

---

[2] Carr could have attacked the voluntariness of his guilty plea on direct appeal.   But, he failed to do so. *See Bousley v. United States*, 523 U.S. 614, 621 (1998).

### III.   Conclusion

For all these reasons, the Petition shall be denied.  A Certificate of Appealability shall not issue.  An Order follows.


Date: September 30, 2016                                            _____/s/_____
                                                                                       Ellen L. Hollander
                                                                                       United States District Judge